## THIRD DEPARTMENT, JULY, 1921.

Before STATE INDUSTRIAL COMMISSION, Respondent.

In the Matter of the Claim of MARGARET DUNBAR, Widow of JOSEPH DUNBAR, Deceased, in Behalf of Herself and Minor Daughter, Respondent, for Compensation under the Workmen's Compensation Law, for the Death of Her Husband, JOSEPH DUNBAR, v. WILLIAM MACKENZIE and J. M. KNOPP, Employers, and ÆTNA LIFE INSURANCE COMPANY, Insurance Carrier for J. M. KNOPP, Appellants.

*Workmen's Compensation Law — contract for construction of public buildings — assignment thereof — agreement to insure employees — evidence — subcontractor.*

Appeal by the defendants, William MacKenzie and others, from a decision and award of the State Industrial Commission, entered in the office of said Commission on the 9th day of November, 1920.

Award affirmed. All concur, except Kiley, J., who votes to reverse as to MacKenzie, with an opinion.

KILEY, J. (dissenting): Previous to June, 1919, the city of New York awarded to the John H. Parker Company a contract for the construction of buildings for public use on Randall's Island, borough of Manhattan, New York city, and before the said month of June, 1919, the said company failed and said contract was declared abandoned by the city, the party of the first part, under the provisions of said contract applicable thereto. The

same contract was let to the appellant, J. M. Knopp, viz., to finish construction thereunder. It was let on competitive bids and said Knopp was notified on the 26th day of June, 1919, that the contract had been awarded to him. The contract was actually delivered to him on September 18, 1919. The contract contained two provisions, the efficacy and application of which is urged upon this appeal. One clause provides that neither said contract nor any part thereof shall be assigned by the contractor without the consent, in writing, of the city, the party of the first part, and that said contractor, Knopp, shall give his personal and constant attention to the work to be performed thereunder. The other provision of said contract, material here, provides that "this contract shall be void and of no effect unless the person or corporation making or performing same shall secure compensation for the benefit of, and keep insured during the life of this contract, the employees engaged thereon, in compliance with the provisions of chapter 41 of the Laws of 1914, known as the Workmen's Compensation Law, and acts amendatory thereof." It may be observed here that the city of New York, the party of the first part, has not made any provision and has not exercised any care after the letting of said contract, to see that the foregoing provisions of this contract had been carried out in accordance with such provision; such supervision and oversight would generally and in this case specifically, save and have saved all of the delay and litigation that have followed the letting. It appears and is not contended to the contrary, that the appellant Knopp did sublet by an instrument in writing, the interior woodwork, carpenter work, to one MacKenzie. This last-named contract provides that the work to be performed by the subcontractor should be done under the specifications, terms and conditions of agreement had between the contractor, Knopp, and the city of New York. Knopp, excusing his failure to get written permission to sublet to MacKenzie, swears that he did not receive the contract containing permission clause until after he commenced work on the contract, and that he followed the custom of getting permission from the architect representing the city of New York and acted upon it, to which procedure the city of New York did not take exception. It does not avail either of the appellants here as a defense. In reply to the question raised that compensation was not procured as required by the original contract and by inference under the MacKenzie subcontract, Knopp shows that he had several policies from the appellant insurance company, which are not before us, but from the record appears were both against public liability and injury to workmen. Knopp did not seem to appreciate any distinction between them, and it is conceded the policies were intended to cover his subcontractor's men, and that all that was necessary to get compensation thereunder was to hand in the payroll of any subcontractor quarterly so that the amount of premium could be figured. The close of the year and last quarter of these policies expired November 26, 1919. It appears from the record that MacKenzie had an oral arrangement with Knopp that the men he, MacKenzie, hired should be covered under Knopp's policies with the appellant insurance carrier. The evidence is that within a week after his contract with Knopp

he hired Joseph Dunbar, claimant's husband and intestate, but that Dunbar
did not go to work on this particular job until a short time before October
21, 1919. It appears from the evidence that on the job where Dunbar
was at work, and as part of his work, was a skylight made up of sashes
glazed, which could only be put in place by the use of a ladder. On
October 21, 1919, the workman, Dunbar, was found at the foot of the
ladder with his skull crushed and the unused sash beside him, and a dent
in the sash. Knopp, on the 23d day of October, 1919, made the employer's
report of the injury, in which he says he was the employer. The widow
made a claim to the State Industrial Commission and named Knopp as the
employer; later the son substituted MacKenzie as employer, and upon a
hearing subsequently held both were joined as general and special employers.
An award was made in favor of claimant for herself and minor daughter.
This appeal is from that award. Knopp appeals, and if his appeal is any-
thing more than mere form, it must be for the interest of the carrier by
showing that he did not hand in the time of the MacKenzie men for audit.
By his testimony he shows that he is responsible in any event. His evidence
shows that he expected the subcontractor's insurance, which he had pro-
cured from the carrier, covered MacKenzie's men; that he could give such
men orders; that he could require their discharge, and direct their work,
and that he made payments to MacKenzie on the payroll of his men
only. That he had this payroll and did not hand it in clearly appears.
There is only one explanation, aside from carelessness or intentional omission,
why he did not present the MacKenzie payroll to the auditor of the
insurance carrier, viz, that Dunbar commenced work after August 26, 1919.
The three months' period for the examination of that account would not
expire until after the accident. The presence of Knopp as an appellant
here may have one other explanation, to wit, so that the carrier could use
him to show that the minds of the carrier and Knopp did not meet when
the insurance contract was entered into between them. The carrier should
have known what the contract covered, or do as it did do, leave it to the
discretion of Knopp. If Knopp is right that is what it did do, and having
done so it cannot now take advantage of its own omission to know who
was insured, or the omission of Knopp to report the subcontractor's men
for audit. Neither can Knopp be heard to say his omission, intentional or
otherwise, can relieve him or his carrier of liability under the policies issued
for the subcontractor's men. In other words, the policies were issued to
cover subcontractor's men. The acts of these parties cannot be used to
defeat this claimant out of what she is rightfully entitled to under the
original contract and subcontract. There is no question but what Dunbar
was killed by a fall while in the course of his employment, while at the place
of his employment. It appears he had not been sick for thirty years, a
man in good health and a skilled mechanic; yet MacKenzie has appealed
and here urges that there is no evidence that he was injured in the course
of his employment or by causes arising out of that employment. The
Commission could and did find adversely to MacKenzie's contention. By
agreement, MacKenzie was to be relieved from procuring compensation

insurance.  That course had been followed on previous occasions according to his testimony.  That the carrier had recognized such custom in the case of Knopp appears from this evidence.  As it appears to my satisfaction that the primary liability, by every moral and reasonable intendment, rested upon Knopp and the insurance carrier I think the award as to MacKenzie should be reversed; not, however, upon the ground advanced upon his appeal, but because the insurance carrier and the contractor Knopp had made provision, and did, to all intents and purposes, effect the insurance called for primarily; called for in the contract with the city and referred to and reaffirmed in the contract with MacKenzie.  The award should be reversed as to MacKenzie and affirmed as to Knopp and the insurance carrier.